**Anthony B. RICHARDSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–00–0358–CR.**

Court of Appeals of Texas,
Amarillo.

Dec. 21, 2000.

---

Michael Laviage, Steven Lieberman, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. (Calvin A. Hartman, Asst. Dist. Atty.), Houston, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

In this appeal, appellant Anthony B. Richardson challenges his conviction for the possession of a controlled substance, namely cocaine, with the intent to deliver and the consequent bench-assessed punishment of 20 years confinement in the Texas Department of Criminal Justice and a $10,000 fine. Appellant entered a plea of guilty after his motion to suppress was denied. Each of the three issues he presents in this appeal concern the denial of his motion to suppress. For reasons we later recount, we reverse the judgment of the trial court and remand this matter to that court.

A proper consideration of the questions presented in appellant's issues requires a recitation of the evidence presented at the hearing on the motion to suppress. At approximately 2 a.m. on December 9, 1999, Department of Public Safety (DPS) Trooper Robert Chavez was patrolling on Interstate Highway 45 (I–45) in Harris County just south of the intersection of I–45 and Farm to Market Road (FM) 2920 when he saw appellant's vehicle traveling in the right-hand lane at approximately 45 miles per hour. Because he believed the posted speed limit was 65 miles per hour, Chavez suspected the driver might be intoxicated, so he pulled in behind appellant's car and turned on a video camera. The recording from the camera was entered into evidence at the hearing. Appellant maintained a single lane of traffic and slowly increased his speed to approximately 57 miles per hour. Shortly thereafter, Chavez stopped appellant and told him he had been stopped for driving 45 miles per hour in a 65 mile per hour speed zone.

At the suppression hearing, Chavez averred that appellant exhibited "several indicators that there could possibly be some other type of criminal activity besides an intoxicated driving offense," including nervousness and perspiration, statements differing from those of his passenger, and an admission to a prior arrest for drug possession. Appellant declined to give his consent for a search of his car.

While appellant was stopped, a second DPS trooper arrived with a drug-sniffing dog. After appellant refused to give con-

sent to a search of his car, the dog was led around appellant's car and, the trooper testified, indicated the presence of drugs at the driver's door. The dog was let inside the car and indicated that more drugs were present on the front passenger seat and the back seat area. The dog also gave an alert on two bags in the car's trunk. Upon searching the trunk, Chavez found a box with three bricks of cocaine wrapped in plastic. This discovery led to appellant's arrest.

The clerk's record contains two motions to suppress but the first motion, dated January 18, 2000, does not exhibit a file mark. The second motion was filed on May 3, 2000, and asserts the search and arrest were made without a warrant or probable cause, the officers did not have reasonable suspicion to justify the stop, the detention exceeded the purpose of the original stop, lack of consent, and that the search was not incident to a lawful arrest. On May 11 and 12, 2000, the trial court held a hearing on this motion. Both parties presented evidence and Trooper Chavez's videotape was received into evidence. The motion was overruled, leading to appellant's plea of guilty and this appeal.

As we have indicated, each of appellant's three issues assign error to the trial court's overruling of the motion to suppress. The first issue is a general allegation of error because of the warrantless search, while the second and third issues assert the warrantless search and the ensuing seizure of evidence violated the protections afforded by the Fourth Amendment to the Federal Constitution and article 1, section 9 of the Texas Constitution.

In *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997), the court articulated the standards by which we review a motion to suppress evidence. In that case, the court indicated that we are to apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts that the record supports ... especially when the trial court's fact findings are based on an evaluation of credibility and demeanor" and reviewing *de novo* the court's application of the law to those facts. *Id.* at 88–89.

When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, he bears the burden of proof. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant. *Id.* Once a defendant has established 1) that a search or seizure occurred, and 2) that no warrant was obtained, the burden of proof shifts to the State. *Id.* If the State is unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure. *Id.*

Not all interactions between police and the public implicate Fourth Amendment rights. In consensual interactions in which "the person to whom questions are put remains free to disregard the questions and walk away," no seizure has occurred. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App.1997). However, when the police stop a person to investigate a criminal offense, there has been a seizure under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Where the stop is brief and limited in scope to confirm or dispel the officer's reasonable belief that a crime has occurred or is about to occur, the seizure is "reasonable" even without a warrant. *Id.* For the officer's suspicion to be reasonable, he or she must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts" support the suspicion that the person has, or soon will be, engaged in criminal activity. *Id.*; *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). The *Terry* rule is also applicable to traffic stops. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Howev-

er, the *Brignoni–Ponce* Court took care to state that the stop and investigation must be "reasonably related in scope to the justification for their initiation." 422 U.S. at 881, 95 S.Ct. 2574. *See also Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim.App. 1997). If the traffic stop was illegal, then evidence obtained as a result of that stop must be excluded. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Pamph.2000).

■■■■■ It is undisputed that Trooper Chavez did not have a warrant to either search appellant's car or to arrest him. Thus, it was the State's burden at the suppression hearing to show Chavez had at least a reasonable suspicion that appellant had either committed an offense or was about to do so before he made the stop. Determining whether the record supports a finding of reasonable suspicion by Chavez is complicated by the fact that the officer did not give consistent testimony as to why he stopped appellant. During direct examination, he testified:

> Q: Is that a traffic violation to be going at such a slow speed?
>
> A: Yes, ma'am.
>
> Q: And what type of a traffic violation would that be?
>
> A: Impeding traffic.

\* \* \*

> Q: When you initially made the stop, what was that for?
>
> A: Impeding.

However, on cross-examination, he gave contradictory testimony:

> Q (By the defense): Now, is there a traffic violation for driving 45 in a 65?
>
> A: As far as on that roadway, no sir.
>
> Q: Isn't it true that's the only reason you stopped that vehicle?
>
> A: No, sir, I did not.

> Q: Isn't it true that at least four places on the videotape you state that is the reason for stopping that vehicle?
>
> A: Well, that was the speed that they were stopped at, sir.
>
> Q: And that's the only reason you state on that videotape why you stopped them, correct?
>
> A: No, sir. My immediate reason for stopping them was that I believed that it was an intoxicated driver.

Having recounted the relevant evidence, it becomes our task to determine if either of the stated reasons were sufficient to justify the stop.

### Impeding Traffic

The relevant statute in this connection is section 545.363 of the Transportation Code. Subsection (a) provides:

> An operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with the law.

Tex.Trans.Code Ann. § 545.363 (Vernon 1999). Subsection (b) authorizes certain entities to set minimum speed limits and subsection (c) prohibits driving slower than a posted minimum speed. *Id.* The parties do not dispute the fact that no minimum speed limit was established for the highway in question. Subsection (a) being the only applicable provision, we must determine whether the evidence shows Chavez had a reasonable suspicion that appellant's driving was an impediment to the normal and reasonable movement of traffic.

When asked about other traffic on the road at the time he stopped appellant, Trooper Chavez stated that only one vehicle passed appellant during his observation and there was "nothing unusual" about that. There were no other vehicles behind appellant waiting to pass him. After Chavez pulled in behind appellant, appellant increased his speed to approximately 57 miles per hour.[1] Chavez and the State

---

1. The State's characterization of this conduct as "sudden acceleration" is not supported by the record.

characterize this as evidence of "evasiveness" by increasing his speed "to make himself appear more normal." The videotape shows that no other cars passed appellant during the time Trooper Chavez was behind him. Only after the vehicles occupied by Chavez and appellant pulled onto the road shoulder did other vehicles pass by.

Our examination of the evidence compels us to hold it insufficient to support a reasonable suspicion that appellant was impeding traffic in violation of section 545.363(a) of the Transportation Code. We do not agree with the State's argument that appellant's increase of speed, to a speed still well within the limit, was indicative of an offense. To accept that argument would be to set a precedent that any movement a driver might make within the bounds of legal permissibility, such as a change in lanes, moving to a different roadway, slowing down or increasing the vehicle's speed would be indicative of a guilty conscience. This we cannot do. The testimony at the hearing and the videotape establish that there was little or no traffic on the road for appellant to impede and what traffic there was, had no difficulty in passing.

Additionally, Chavez admitted that if appellant had been driving only 10 miles per hour under the speed limit, that conduct would not have posed a safety problem and would not justify a stop. Although Trooper Chavez denied the area in question was under construction, his fellow Trooper Smith testified there was construction in the area which had a 55 mile per hour posted speed limit. When queried as to where the construction ended, Smith testified that he was not sure, and "I actually thought we were north of that [construction zone] in the 65 zone."

With regard to whether or not the relevant speed limit was 65 miles per hour, appellant introduced testimony of Otto Maresh, whose duties at the Texas Department of Transportation included being the custodian of the local office records. Without objection, Maresh presented business records of the Department showing the segment of I–45 from Cypresswood Road north to the intersection of the Hardy Toll Road was under construction from April 1999 through the day of trial. These documents included several maps of the area showing the construction included the intersection of I–45 and Spring Cypress Road (FM 2920), where Chavez testified he entered I–45. The maps show the Hardy Toll Road intersection is just south of the boundary between Harris and Montgomery Counties. Even if there was no active construction in the area where the stop took place, it is clear that the events occurred in the designated construction zone.

The Department records also show approval of a 55 mile per hour limit during the duration of the construction project as well as a diagram indicating the placement of signs indicating the lower limit. The diagram indicated a single speed limit sign for northbound traffic placed south of Cypresswood Road on April 12, 1999. It is apparent that had Trooper Chavez entered I–45 at its intersection with FM 2920, as he testified, he would not have seen the single 55 mile per hour speed limit sign placed to the south of that intersection. Thus, this is not a case in which the resolution of conflicting evidence based upon an evaluation of credibility and demeanor is necessary. The State's evidence does not contradict the Department of Transportation's documents. Rather, it shows why Trooper Chavez was mistaken about the speed limit. Thus, because the evidence shows that appellant was only traveling 10 miles per hour under the allowable limit, under Trooper Chavez's own opinion, appellant would not be impeding traffic under section 545.363(a) of the Transportation Code. For all of these reasons, section 545.363(a) of the Transportation Code does

not support the investigatory stop of appellant.

### Driving While Intoxicated

■ The second possible justification Trooper Chavez offered for appellant's stop was to investigate if appellant was intoxicated. The speed at which appellant was traveling was the only reason he averred his suspicions as to whether appellant was intoxicated. He did not state that appellant had difficulty staying in a single lane or exhibited any other deficiencies in operating his vehicle.

■ Chavez testified as to three reasons why a driver might be driving slowly. First, he opined, if the driver was having car trouble, second if the driver was elderly, or third, if the driver was intoxicated. It is established that slow driving may be a factor in arousing the reasonable suspicion of an officer. *See, e.g., Markey v. State,* 996 S.W.2d 226, 228 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (driving 16 mph, weaving, and long pause to make a turn). Even so, the trooper admitted there might be other reasons why a person would be driving slowly and he cited no other reason why his suspicions were aroused. Even assuming that Chavez was correct as to the speed limit and appellant was driving 20 miles per hour under the speed limit, that conduct in and of itself would not justify an investigatory stop for driving while intoxicated.

We are compelled to conclude that this record does not justify a reasonable suspicion that appellant was impeding traffic or was driving while intoxicated. Thus, we hold the investigatory stop was improper. That being true, in conformity with the dictates of article 38.23 of the Code of Criminal Procedure, evidence acquired as a result of the stop could not have been admitted and the trial court erred in ruling to the contrary.

Accordingly, we must reverse the judgment of the trial court and remand the cause to that court for further proceedings consistent with this opinion.