In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00051-CV


______________________________




JULIO RESENDIZ, Appellant



V.



THELMA O'QUINN, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2000-408




 





Before Morriss, C.J., Ross, and Grant,* JJ.

Memorandum Opinion by Justice Grant



______________

*Ben Z. Grant, Justice, Sitting by Assignment

MEMORANDUM OPINION



 Julio Resendiz and Thelma O'Quinn have filed a joint motion stating that they have settled
their dispute and asking this court to dismiss the appeal and allocate costs to the party incurring those
costs. Pursuant to Tex. R. App. P. 42.1, their motion is granted. 

 The appeal is dismissed, with costs assessed against the party incurring those costs. 



 Ben Z. Grant

 Justice


Date Submitted: March 6, 2003

Date Decided: March 7, 2003




.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00151-CR
______________________________


ANNETTE JOY BILYEU, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Criminal Court of Appeals No. 2
Dallas County, Texas
Trial Court No. MB02-14282-M


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Police officer Jeffery Alan Rose and his partner were taking a break on the parking lot of an
Addison, Texas, convenience store around 2:00 a.m., June 20, 2002, when an unidentified man
approached them. The man reported that he saw a woman asleep at the wheel of a gold Mercedes-Benz automobile stopped at a nearby traffic light—and the light was green. The man then noticed
the same vehicle creeping past their location at ten miles per hour in a thirty-five-mile-per-hour zone
and pointed it out. The officers followed the vehicle, noticing no traffic violations, and eventually
stopped it, identified the driver as Annette Joy Bilyeu, determined she was intoxicated,


 and arrested
her. Bilyeu appeals from her jury conviction for driving while intoxicated (DWI),


 challenging (1)
the legality of the stop and, thus, the evidence obtained from that stop, and (2) the trial court's refusal
to charge the jury regarding the legality of the search under Article 38.23 of the Texas Code of
Criminal Procedure. We affirm.
Legality of Search
            In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to
the trial court's determination of historical facts and review de novo any questions of law concerning
the search and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Thus, we
will review de novo the question whether Rose had reasonable suspicion to stop Bilyeu. See
Guzman v. State, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). In the absence of explicit findings
of fact, we view the evidence in the light most favorable to the trial court's ruling and sustain its
decision if correct under any applicable theory of law. See Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002).
            To justify an investigative detention, an officer must have reasonable suspicion of possible
criminal conduct. See Terry v. Ohio, 392 U.S. 1, 21 (1968); Garza v. State, 771 S.W.2d 549, 558
(Tex. Crim. App. 1989). Courts examine the totality of the circumstances to determine whether
reasonable suspicion existed. See Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997);
State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1996, pet. ref'd). An officer must have
specific articulable facts which, taken together with rational inferences and the officer's experience
and general knowledge, reasonably indicated the detained person was preparing to engage or had
engaged in a crime. Davis, 947 S.W.2d at 242.
            Bilyeu contends the information given to Rose by the unidentified citizen is on the same
footing as an anonymous tip,


 that it is insufficient to form reasonable suspicion. Bilyeu correctly
states that an anonymous tip cannot, by itself, become reliable enough to support a finding of
reasonable suspicion. Here, however, the trial court found the citizen's personally appearing before
the officers gave greater reliability to the information he provided them. 
            Reasonable suspicion is dependent on both the content of the information possessed by the
officer and the degree of reliability of the information. See Davis v. State, 989 S.W.2d 859, 863
(Tex. App.—Austin 1999, pet. ref'd). While an anonymous tip or telephone call may justify the
initiation of an investigation, only rarely will a tip from an unnamed informant of undisclosed
reliability, standing alone, establish the requisite level of reasonable suspicion to justify an
investigative detention. See Florida v. J.L., 529 U.S. 266, 269 (2000). There must be some further
indicia of reliability, some additional facts from which a police officer may reasonably conclude that
the tip is reliable and a detention is justified. See id.
            A. Accountability
            The facts surrounding the unidentified citizen's report constitute some indicia of reliability. 
When an unnamed informant puts himself or herself in a position where he or she could easily be
accountable, the tip becomes more reliable. See Sailo, 910 S.W.2d at 188. Particularly, unsolicited
information given to police in a face-to-face manner should be given serious attention and great
weight by the officer even though the informant did not identify himself or herself. United States
v. Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir. 1978). Distinguishing the conversation in Sierra-Hernandez from an anonymous telephone call, the court pointed out that the informant confronted
the officer directly and did so while the informant was driving a car. Id. Therefore, although the
informant did not identify himself, his identity easily could have been determined from the license
plates. Id. These distinctions would have allowed the officer to further question the informant had
the officer deemed it necessary and also would have allowed officials to hold the informant
accountable for the information he provided. Id.
            In Sailo, an officer stopped and eventually arrested a driver for DWI after a citizen
approached the officer with information regarding a possibly drunk driver. Sailo, 910 S.W.2d at 186. 
The citizen stated that a white Toyota pickup truck was "all over the road and had almost run into
a ditch twice." Id. When the truck approached, the officer pulled the driver over. Id. The Fort
Worth Court of Appeals concluded the face-to-face nature of the tip increased the reliability of the
information and, thus, less corroboration was necessary to justify the investigative detention. Id. at
188. The experience of the officer and his knowledge that drunk drivers frequently travel through
that area were sufficient corroboration of the highly reliable information. See id. at 189. Therefore,
the totality of the circumstances justified the investigative detention that led to the driver's arrest and
conviction. Id.
            The court in State v. Fudge, 42 S.W.2d 226, 229 (Tex. App.—Austin 2001, no pet.),
considered the trial court's suppression of evidence in a DWI prosecution. In Fudge, a cab driver
approached a police officer stating that a white pickup truck was "all over the road" and that he
thought the driver was drunk. Id. at 228. The cab driver then pointed out the truck as the driver
drove it around a store parking lot. Id. The officer immediately pulled the truck over and
subsequently arrested the driver for DWI. Id. The arresting officer testified he based the stop solely
on the cab driver's tip. Id. at 229. The Austin Court of Appeals noted that the officer did not observe
any independent acts on which to base the stop. Id. at 230. The record also failed to suggest any
other facts to justify the stop. Id. at 232. Relying on Sierra-Hernandez and Sailo, the majority



concluded that the cab driver's giving unsolicited information in a face-to-face encounter made the
information alone sufficiently reliable to justify the stop. Id.
            Here, we have circumstances similar to those present in Sierra-Hernandez and Sailo. The
citizen approached the officers. He provided them with unsolicited information regarding the car
he observed four blocks away. Like the unidentified informants in Sierra-Hernandez and Sailo, the
concerned citizen here approached the officers in his vehicle, which would have allowed the officers
to identify him had they deemed it necessary. The citizen's providing this information directly to the
officers, in person, makes the information significantly more reliable than a simple anonymous
telephone call.
            B. Corroboration
            Further, corroboration by matters within an officer's knowledge and experience increases the
reliability of the information and, ultimately, the justification of the detention. See Sailo, 910
S.W.2d at 189. Corroboration only of details that are easily obtainable at the time the tip is made
will not furnish a basis for reasonable suspicion. J.L., 529 U.S. at 271–72; Davis, 989 S.W.2d at
864. The observations need not reveal criminal conduct; even innocent acts can give rise to
reasonable suspicion under certain circumstances. Woods v. State, 970 S.W.2d 770, 773 (Tex. Crim.
App. 1998). The officer must corroborate facts that would lead him or her to reasonably suspect that
"some activity out of the ordinary is occurring or had occurred, some suggestion to connect the
detained person with the unusual activity, and some indication that the activity is related to a crime." 
Davis, 989 S.W.2d at 863.
            For instance, in Dowler v. State, 44 S.W.3d 666, 670 (Tex. App.—Austin 2001, pet. ref'd),
after officers received an anonymous call reporting a suspected drunk driver, they observed the
suspect drift within his lane of traffic, drive twenty miles per hour below the posted speed limit, and
fail to respond to the patrol car's emergency lights. Id. Such conduct, although not criminal, was
sufficient to lend reliability to the anonymous tip and to justify investigative detention of the driver
on reasonable suspicion. Id.
            Bilyeu relies on Stewart v. State, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd),
to support her contention that the anonymous tip is insufficient to support reasonable suspicion. 
Since officers did not observe her commit a traffic offense, she argues, there is no meaningful
corroboration of the information provided by the citizen. She calls on this Court to treat the facts
before us in a similar manner. In Stewart, according to an anonymous caller, the driver of a green
Chevrolet Camaro apparently fell down a couple of times trying to get into his car and appeared to
be highly intoxicated. Id. The officers found the suspect's car and followed it for a short time. Id. 
During that time, it is undisputed that the officers observed no erratic driving and no traffic offense. 
That being the case, the sole basis for the vehicular stop was the anonymous tip. Id.
            The case before this Court is distinguishable. Here, Rose observed Bilyeu driving a vehicle
matching the description just given by the informant. Additionally, Rose observed Bilyeu traveling
at a speed of ten miles per hour in a thirty-five-mile-per-hour zone. She continued to drive at that
speed despite the fact two police cars were following her, with no indication she noticed their
presence. Further, when Rose engaged his emergency lights, Bilyeu initially increased her speed just
before she pulled over. Also relevant to Rose's suspicion is the fact that Bilyeu was operating her
vehicle after 2:00 a.m. in Addison, an area well-known for its restaurants and bars, according to
Rose's testimony. Even though Bilyeu may not have committed a traffic violation, her unusually low
speed and her initial lack of reaction to the police, coupled with the circumstances and in light of
Rose's experience, provide adequate corroboration of the information provided by the unidentified 
citizen. Such facts clearly were of such a nature as to indicate that Bilyeu was involved in "some
activity out of the ordinary."
            Bilyeu, apparently dismissing the citizen's report, also argues that observing someone driving
well below the posted speed limit is insufficient to justify Rose's stop. She cites Viveros v. State, 828
S.W.2d 2, 4 (Tex. Crim. App. 1992), and Richardson v. State, 39 S.W.3d 634, 639 (Tex.
App.—Amarillo 2000, no pet.), which conclude the traffic stops involved were unjustified since the
respective officers had no facts other than observation of slow driving to lead to reasonable
suspicion. In Viveros, when the appellant reduced his speed to match the speed of the officers' patrol
car, the officers were not justified in stopping him because his actions were insufficient to create a
reasonable belief that such actions were related to a crime. Viveros, 828 S.W.2d at 4. Likewise, in
Richardson, Department of Public Safety troopers stopped the appellant after they observed the
appellant driving forty-five miles per hour in a sixty-five-mile-per-hour speed zone. Richardson,
39 S.W.3d at 639. The cocaine discovered in the subsequent consensual search should have been
excluded since the troopers did not have reasonable suspicion to justify initially stopping Richardson. 
Id. Here, in contrast to the situations in Viveros and Richardson, Rose relied on his observation of
Bilyeu's driving and on the report of her being asleep at the wheel at a green light. In Viveros and
Richardson, there was no information provided to officers that would have prompted investigation
of those matters.
            We hold that Rose, in light of the circumstances, confirmed sufficient facts which enabled
him to reasonably conclude the information given to him was reliable, and a temporary detention
was, therefore, justified. The evidence of Bilyeu's intoxication, obtained after the detention of the
vehicle, was admissible. Accordingly, the trial court did not err in overruling Bilyeu's motion to
suppress.
            Even if the stop was not supportable on the basis of a reasonable suspicion of a violation of
law, the officers had sufficient information to validate the stop on the basis of the community
caretaking function. As part of an officer's community caretaking function, he or she may stop to
help someone that "a reasonable person, given the totality of the circumstances, would believe is in
need of help." Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). An officer is not
entitled to invoke the community caretaking function if he or she is primarily motivated by a
different purpose, such as law enforcement. Id. at 277. Here, the record reflects that Rose was
concerned Bilyeu may have been injured, tired, or intoxicated. The trial court, as the exclusive judge
of credibility and the fact-finder, could have concluded Rose was primarily motivated by community
caretaking concerns. See id. Once that is determined, we examine whether Rose's belief that Bilyeu
needed help is reasonable by looking at the following four factors:
(1) the nature and level of the distress exhibited by the individual; (2) the location of
the individual; (3) whether or not the individual was alone and/or had access to
assistance other than that offered by the officer; and (4) to what extent the individual,
if not assisted, presented a danger to himself or others.

Id. After being told she had been asleep behind the wheel, stopped at a green light, and then seeing
her driving for a time at ten miles per hour, fifteen less than the posted limit, apparently unaware of
the officers following her until they activated the lights on the patrol car, officers were justified in
believing there was a significant level of distress exhibited by Bilyeu. She was alone at 2:00 a.m.,
showing unusual behavior, and therefore might very well have been a danger to herself or others. 
There was ample evidence to support the stop on the basis of the community caretaking function,
and the trial court in its role as fact-finder so found. 
            We overrule Bilyeu's first point of error.
Jury Instruction
            In her second point of error, Bilyeu complains the trial court committed harmful error when
it refused to instruct the jury regarding the legality of the search under Article 38.23. See Tex. Code
Crim Proc. Ann. art 38.23 (Vernon Supp. 2004). We disagree. Bilyeu was entitled to an
instruction under Article 38.23 only if the evidence raised a factual issue regarding the legality of
the detention. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996). Here, Bilyeu does not
dispute any of the testimony as set out in the State's case. See Hamilton v. State, 831 S.W.2d 326,
331 (Tex. Crim. App. 1992). Rather, she argues that those facts cannot justify the officer's stopping
her. Her arguments give rise to questions of law, not of fact, and, therefore, the trial court was not
required to instruct the jury under Article 38.23. We overrule Bilyeu's second, and remaining, point
of error.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 29, 2004
Date Decided:             April 29, 2004

Publish