# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00457-CR

### Ryan Cameron Foster, Appellant

### v.

### The State of Texas, Appellee

---

### FROM COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C1-CR-07-218663, HONORABLE JAN BRELAND, JUDGE PRESIDING

---

## O P I N I O N

The State charged Ryan Cameron Foster with the Class B misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). Following the trial court's denial of Foster's motion to suppress, Foster pleaded no contest. The court sentenced him to 120 days' confinement and a $2,000 fine, but suspended imposition of this sentence and placed him on community supervision for eighteen months. In one point of error, Foster argues that the trial court erred by not suppressing evidence obtained by the police during his investigative detention and subsequent arrest because the police did not have reasonable suspicion to investigate him for driving while intoxicated. Because Foster's detention was not supported by reasonable suspicion, we reverse the order of the trial court.

**BACKGROUND**

On September 13, 2007, at approximately 1:30 a.m., Kurt Thomas, an Austin Police Department detective, was stopped at a red traffic light in downtown Austin at the intersection of Eighth Street and the southbound frontage road of Interstate 35, near the downtown Austin police station.[1]

Thomas testified that while he was stopped at the traffic light, Foster drove up behind him in a Ford F-150 truck, with his headlights shining directly into Thomas's rearview mirror. Foster pulled extremely close to Thomas's unmarked vehicle, but did not actually make contact with Thomas's vehicle. According to Thomas, he heard a revving sound and noticed Foster's truck lurch forward once, then a second time, as if attempting to maneuver into the empty lane to the left. During the second lurching movement, Foster's vehicle moved slightly to the left but could not move into the empty lane because it was too close to Thomas's vehicle.

Immediately after the second lurching movement, a marked Austin Police Department patrol car driven by Sergeant Eric De Los Santos pulled alongside Thomas and Foster. Because Foster's truck was stopped on a two-lane, one-way street, he was effectively prevented from moving by the presence of the two police vehicles. Thomas and De Los Santos then exited their respective vehicles and approached Foster.

Upon approaching Foster's vehicle, Thomas and De Los Santos detected the odor of an alcoholic beverage. Foster was removed from his truck and a responding DWI enforcement officer conducted field sobriety tests, resulting in Foster's arrest for driving while intoxicated.

---

[1] The facts recited herein are drawn from the testimony and exhibit admitted at the pretrial suppression hearing.

In a pretrial motion, Foster moved to suppress all evidence obtained as a result of the stop on the grounds that his detention was improper because it was not supported by reasonable suspicion. The trial court denied the motion to suppress, making express findings that Thomas's testimony was credible and that Thomas had reasonable suspicion to detain Foster in light of the time of night, the location near Austin's downtown bar district, and Foster's erratic driving, particularly the two lurching movements described in Thomas's testimony. This appeal followed.

**DISCUSSION**

On appeal, Foster contends that the trial court erred in denying the motion to suppress because the stop violated the prohibition of unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. In response, the State argues that Foster was not detained until he was removed from his truck, at which time Thomas had not only observed Foster driving in an erratic fashion late at night near a bar district, but had also detected the odor of alcoholic beverages coming from Foster's vehicle. The State also argues that Thomas was justified in detaining Foster because he had reasonable suspicion that Foster had committed the traffic offenses of unsafe start from a stop position and reckless driving.[2]

---

[2] At the suppression hearing, the State did not contend that the detention occurred only after Thomas and De Los Santos detected the odor of alcoholic beverages, nor did it argue that the detention was justified by any traffic violations. Instead, the State took the position that Thomas had reasonable suspicion to detain Foster based on his unsafe and erratic driving, combined with the lateness of the hour and the proximity of the Sixth Street bar district.

***Standard of Review***

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a de novo review of the court's application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). When reviewing the trial court's decision, an appellate court views the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). The trial court's ruling must be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This rule holds true even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

***The Detention***

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Carmouche*, 10 S.W.3d at 328. When a warrantless seizure occurs, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). "[R]easonable suspicion requires 'that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime.'" *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Viveros v. State*, 828 S.W.2d 2, 4

4

(Tex. Crim. App. 1992)). A reasonable suspicion means more than a mere hunch or non-specific suspicion of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). We take into consideration experienced police officers' perceptions and review their perceptions objectively, rather than subjectively. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). The reasonableness of a temporary detention must be examined by considering the totality of the circumstances at its inception and the detention will only be justified if the officer can point to specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Id.*; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

### When was Foster detained?

The State argues that because Foster's truck was "at a standstill of its own accord," Foster was not detained until he was removed from his truck and only after the officers detected a strong odor of alcoholic beverages coming from the vehicle. In essence, the State argues that the two officers were simply initiating a consensual encounter with Foster which then turned into an investigative detention when they detected the odor of alcoholic beverages.

An investigative detention is distinguishable from a consensual encounter, which does not infringe on a constitutional right and requires no justification. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). An officer without reasonable suspicion of criminal activity may question an individual during a consensual encounter, "as long as the person to whom questions are put remains

5

free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, an investigative detention occurs when a person's freedom of movement is restrained, either by physical force or a show of authority. *Johnson v. State*, 912 S.W.2d 227, 236 (Tex. Crim. App. 1995). A detention occurs when a person yields to an officer's show of authority or when a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 436 (1991); *State v. Velasquez*, 994 S.W.2d 676, 678-79 (Tex. Crim. App. 1999). Determining at what point in time someone is detained is a question of law. *Davis v. State*, 22 S.W.3d 8, 11 (Tex. App.—Houston [14th Dist.] 2000, no pet.). An investigative detention constitutes a seizure and invokes constitutional safeguards. *Mendenhall*, 446 U.S. at 553.

In this case, Foster was stopped on a two-lane, one-way street when he found himself barricaded on the front and side by two vehicles, one of which was a marked police car. While Foster was hemmed in by the two vehicles, police officers exited from the vehicles and began approaching his truck. Under such circumstances, a reasonable person would not only feel that he was not free to leave, but would be physically prevented from doing so, absent an attempt to exit the vehicle and flee on foot. On that basis, we hold that Foster was detained at the time the police officers blocked his vehicle, preventing him from leaving the scene, and began to approach. Thus, the detention must be justified based on the totality of the circumstances at that time.[3]

---

[3] The State cites *Martin v. State*, 104 S.W.3d 298, 301-02 (Tex. App.—El Paso 2003, no pet.), in which the court held that a police officer, by pulling up behind a vehicle broken down at an intersection and turning on his lights to warn approaching traffic of the stopped vehicle, merely instigated a consensual encounter, rather than a detention. However, the facts of *Martin* are distinguishable from the present case, as Foster's vehicle was not broken down in the roadway, creating a potential hazard for approaching traffic, but was stopped at a traffic light when the police vehicles blocked his path and prevented him from leaving the scene.

***Reasonable Suspicion***

On appeal, the State presents two theories to justify the stop. First, the State argues that Thomas was justified in detaining Foster based on reasonable suspicion that a traffic offense had occurred. *See Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop."). Second, the State argues that the stop was justified based on reasonable suspicion that Foster was intoxicated. *See Hernandez v. State*, 983 S.W.2d 867, 870 (Tex. App.—Austin 1998, pet. ref'd) (reviewing "reasonableness of the stop on the basis of a suspicion that appellant was intoxicated"). We will examine each of these theories in turn.

1.      *Was there reasonable suspicion of a traffic offense?*

The State contends on appeal that Thomas was justified in making the stop because he had reasonable suspicion that Foster had committed the traffic violations of unsafe start from a stop position and reckless driving. *See* Tex. Transp. Code Ann. §§ 545.401(a), .402 (West 1999).[4] An officer may legally initiate a detention if he has a reasonable basis for suspecting that a person has committed a traffic offense. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense. *Whren v. United States*, 517 U.S. 806, 808 (1996). There is, however, no requirement that an actual traffic offense be committed, just that the officer

---

[4] Section 545.402 provides, "An operator may not begin movement of a stopped, standing, or parked vehicle unless the movement can be made safely." Tex. Transp. Code Ann. § 545.402 (West 1999). Section 545.401(a) provides, "A person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a) (West 1999).

reasonably believed that a violation was in progress. *Davy v. State*, 67 S.W.3d 382, 393 (Tex. App.—Waco 2001, no pet.); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.).[5]

In the instant case, Thomas testified at the suppression hearing that Foster drove up and stopped extremely close to his vehicle at a traffic light, but that he did not hear any sounds of tires screeching as Foster approached. Thomas then heard a revving sound from Foster's engine and observed the truck make two forward lurching movements. Based on these movements, Thomas concluded that Foster was attempting to move into the next traffic lane, but was too close to Thomas's vehicle to do so. Foster's vehicle never actually left his lane or made contact with Thomas's vehicle. Thomas testified that he considered Foster's driving to be unsafe, and that, in light of the time of night and proximity to the local bar district, he suspected that the driver was impaired.

Viewing Thomas's observations objectively, we conclude that the circumstances did not warrant a reasonable belief that Foster had committed a traffic violation at the time he was detained. Poor or even rude driving habits do not necessarily translate into traffic violations. There was no evidence that Foster was out of control at the time he stopped behind Thomas's vehicle or that he was otherwise driving recklessly. Foster's vehicle never actually left its lane of traffic, nor was there any evidence that it was dangerous to change lanes at the time Foster appeared to be attempting to do so. Foster may very well have intended to move into an open traffic lane while

---

[5] On the other hand, reasonable suspicion of an alleged traffic violation cannot be based on a police officer's mistaken understanding of traffic laws. *See United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002); *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd).

waiting at a traffic light and simply realized, after beginning to initiate the lane change, that he did not have sufficient room to maneuver—a common driving scenario that does not rise to the level of a traffic violation. Based on the totality of the circumstances, we hold that reasonable suspicion did not exist to justify the detention of Foster's vehicle in order to investigate the two proffered traffic violations of unsafe start from a stop position and reckless driving.

2. *In the absence of a traffic offense, was there reasonable suspicion of intoxication?*

The trial court determined that Foster's two lurching movements, when combined with the late hour and proximity of the Sixth Street area, were sufficient to justify the detention for the purpose of investigating whether the driver was intoxicated. We disagree. As previously discussed, the lurching movements were not unreasonably dangerous, reckless, or even inexplicable. While the Court of Criminal Appeals no longer employs the "as consistent with innocent activity as with criminal activity" test for reasonable suspicion, the plausibility of an innocent explanation in this case affects our determination of whether there was a reasonable basis for suspecting that Foster was intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007). Intoxication cannot be inferred from the lurching movements alone, and while the lurching movements may be more suggestive of intoxication when combined with the location and time of night, the combined weight of these circumstances is not so much greater than the aggregation of their individual weights that it allows for a rational inference of intoxication. Time of day, by itself, is "owed virtually no weight" as a factor in determining reasonable suspicion. *State v. Thirty Thousand Six Hundred Sixty Dollars & No/100*, 136 S.W.3d 392, 400 (Tex. App.—Corpus Christi 2004, pet. denied). Similarly, location is generally "an insufficient basis for a rational inference that would lead to a

reasonable suspicion." *Id.* at 401.[6] Furthermore, Thomas's testimony that the lurching movements led him to suspect that Foster was intoxicated does not necessarily establish that this suspicion was reasonable. *See Richardson v. State*, 39 S.W.3d 634, 640 (Tex. App.—Amarillo 2000, no pet.) (holding that detention was not justified despite officer's testimony that he stopped vehicle going substantially slower than speed limit on suspicion that driver was intoxicated); *see also Garcia*, 43 S.W.3d at 530 (stating that "reasonable suspicion is an objective determination" and that while "we give almost total deference to the trial court in determining what the actual facts are, . . . we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion").

We find the present case to be similar to the facts before us in *State v. Guzman*, 240 S.W.3d 362, 365 (Tex. App.—Austin 2007, pet. ref'd), in which an officer initiated a traffic stop based on a driver spinning his vehicle's tires at a downtown intersection at night. In affirming the trial court's order granting the driver's motion to suppress because the detention was not justified by reasonable suspicion, the majority declined "to hold that an officer may lawfully detain on suspicion of intoxication any driver who is seen by the officer to spin a tire at a downtown intersection at night." *Id.* at 368. Likewise, we today decline to hold that an officer may lawfully detain on suspicion of intoxication any driver who is seen making lurching movements at a downtown intersection at night. On that basis, we conclude that reasonable suspicion did not exist to justify Foster's detention for DWI. Because the trial court erred in not suppressing the evidence resulting from the illegal detention, we sustain Foster's sole issue on appeal.

---

[6] We note also that the proximity of the downtown Austin police station to the intersection where the incident occurred would seem to diminish the weight of this factor.

## CONCLUSION

Based on the totality of the circumstances, we hold that reasonable suspicion did not exist to justify Foster's detention. Therefore, the trial court erred in denying Foster's motion to suppress. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson;
  Dissenting Opinion by Justice Puryear

Reversed and Remanded

Filed:  August 6, 2009

Publish