

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-24-00824-CR

Jo Anne **PAEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-23-0761
Honorable Kirsten Legore, Judge Presiding

Opinion by: Rebeca C. Martinez, Chief Justice
Dissenting Opinion by: Velia J. Meza, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              H. Todd McCray, Justice
              Velia J. Meza, Justice

Delivered and Filed: September 24, 2025

The majority affirms the trial court's denial of appellant Jo Anne Paez's motion to suppress, concluding that Officer Ray had reasonable suspicion to initiate a traffic stop based on Paez's driving behavior. I respectfully dissent.

### BACKGROUND

At approximately 1:30 a.m., Officer Ray of the Seguin Police Department encountered Paez while conducting routine patrol in the vicinity of East Court Street and North Austin Street.

While heading towards a nearby gas station, Officer Ray testified that Paez's vehicle entered the roadway ahead of him. He observed that she was driving "particularly slow," and paced her at approximately 20 miles-per-hour, with brief moments of acceleration of up to 32 miles-per-hour in a posted 30 mile-per-hour zone. Officer Ray did not observe any external factors, such as traffic congestion or adverse road conditions, that might have explained Paez's driving pattern.[1]

Officer Ray testified that his encounter with Paez occurred within the "peak DWI hours," which based on his training and experience, occur between the hours of 10:00 p.m. and 4:00 a.m. While Officer Ray testified that he learned that Paez was traveling from a bar, such information was not known to him at the time he initially detained Paez.[2] He further testified that Paez's driving behavior—her reduced and gradual fluctuations in speed—aligned with cues created by the National Highway Traffic Safety Administration (NHTSA) as potential indicators of intoxication. Although Officer Ray referenced NHTSA's study of over 12,000 traffic stops and its list of 24 behavioral cues, he conceded that he did not know the scientific basis for such cues beyond their inclusion in NHTSA's study.[3]

---

[1] Q. And in your training and experience is that an inability to control speed?
A. Yes, sir.
Q. Okay. And in your training and experience is variation of speed, as you just described, a possible cue that may indicate a driver may be impaired?
A. Yes, sir.
Q. Why is that a cue?
A. Again, I can't tell you why. I can just refer to the study that was completed by NHTSA and they listed that as a potential cue of impaired driving.

[2] Q. No, sir? All right. And where was she leaving from?
A. Later I learned she was coming from Seguin Bar and Billiards but when I first saw her, she was turning off of North River Street.

[3] Q. Okay. Now, I noticed in your report that you cited that it -- is it -- that it's a traveling under the speed limit is a cue given by NHTSA; is that correct?
A. Yes, sir.
Q. Why is that a cue that someone might be impaired?
A. I can't necessarily tell you why. I know NHTSA conducted a study in which over 12,000 traffic stops were evaluated and they came up with a list of 24 different cues. Two of the cues that I observed that night, the one most notably, the speed, is traveling less than ten miles under the posted speed limit and/or varying speeds.

Officer Ray's video recording was also admitted into evidence at the suppression hearing. The pertinent part of such video is roughly one minute in length and depicts Paez's vehicle maintaining its lane without deviation, coming to a complete stop at an intersection's red light, proceeding safely through the intersection once the light turned green, responding immediately to the officer's emergency lights, and pulling over in a controlled and lawful manner.

After the suppression hearing, the trial court denied Paez's motion and entered its findings of facts and conclusion of laws.

### ANALYSIS

#### 1. Standard of Review

"In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When a trial court makes explicit fact findings, we must determine "whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings." *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008) (citation omitted).

As a general rule, appellate courts afford almost total deference to a trial court's determination of historical facts, particularly when those findings are based on assessments of witness credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89. And this deference carries over "to a trial court's conclusions on mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *State v. Whittington*, 401 S.W.3d 263, 271 (Tex. App.—San Antonio 2013, no pet.) (citations omitted). However, we review de novo a trial court's findings that pertain to "mixed question of law and fact that does not hinge on a credibility determination or if it is a purely legal question," such as probable cause or seizure determinations. *Id.* This is the case because the trial court's underlying fact findings are given almost total deference, thus, the

trial court "is no longer in a better position than an appellate court to make the ultimate determination." *Id.* (citations omitted).

2. Reasonable Suspicion

In *Terry v. Ohio*, the Supreme Court of the United States established the foundational standard for assessing the constitutionality of investigative stops under the Fourth Amendment. The Supreme Court held that a law enforcement officer may conduct a brief detention if the officer can identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. *See Terry v. Ohio,* 392 U.S. 1, 21 (1968). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *See Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App.2001). This requirement ensures that the officer's conduct is not based on mere hunches or subjective impressions but instead is grounded in observable facts that permit meaningful judicial scrutiny. *See Ford v. State*, 158 S.W. 3d 488, 493 (Tex. Crim. App. 2001).

Officer Ray's testimony fails this test. His observations—that Paez was driving "particularly slow," fluctuating between 20 and 32 miles-per-hour in a 30 mile-per-hour zone during "peak DWI hours"—are insufficient to justify a warrantless detention. While driving below the posted speed limit or with inconsistent speed may be a factor in arousing the reasonable suspicion of an officer, it does not establish reasonable suspicion of driving while intoxicated on its own. *See Richardson v. State*, 39 S.W.3d 634, 640 (Tex. App.—Amarillo 2000, no pet.) (holding that driving 20 miles-per-hour below the posted speed limit and accelerating after an officer pulled in behind the vehicle were insufficient to establish reasonable suspicion of driving while intoxicated). Additionally, without any context to describe the rate or abruptness at which Paez

accelerated or deaccelerated, there is no way to expand upon why such fact alone is sufficient in establishing reasonable suspicion. Furthermore, the record in this case contains no evidence that Paez's lane movement was erratic, unsignaled, or otherwise indicative of conduct warranting a detention. *See Busby v. State*, No. 13-24-00197-CR, 2025 WL 2475158, at *7 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2025, no pet. h.) (mem. op., not designated for publication) (finding that slow driving combined with fluctuation in speed and weaving and drifting within lane was sufficient to establish reasonable suspicion). While Officer Ray did testify that Paez exceeded the posted speed limit by 2 miles-per-hour, he specifically testified that he did not initiate the stop based on this traffic violation. Thus, at its core, Officer Ray's testimony failed to explain how the behaviors he observed that night were indicative of impairment.

Although Officer Ray cited to a NHTSA study listing "24 cues" of intoxicated driving, such study without connecting its findings to the specific circumstances of Paez's stop is insufficient to establish reasonable suspicion.[4] Thus, Officer Ray's inability to articulate how Paez's driving suggested she was impaired renders his suspicion speculative at best and offered little more than broad assertions and references to generalized studies.

Although admitted into evidence, the video footage of Officer Ray's detention of Paez is absent from the trial court's findings of fact and conclusions of law. Nevertheless, appellate courts may conduct de novo review of "indisputable visual evidence contained in a videotape," with deference still given to a trial court's factual finding of whether a witness actually observed what is depicted in the videotape. *State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013) (internal quotation marks omitted). Where the facts are plainly observable and not subject to interpretation based on demeanor, we cannot disregard the contents of the video simply because a

---

[4] Driving slow is only a violation of Texas Transportation Code when it impedes the flow of traffic. *See* TEX. TRANSP. CODE § 545.363(a). No evidence of such is contained within this record.

witness's testimony might otherwise support the trial court's conclusion. *See Carmouche v. State*, 10 S.W.3d 323, 332 (2000).

The footage from Officer Ray's dash camera provides clear, objective visual documentation that directly contradicts key aspects of Officer Ray's testimony. Although Officer Ray claimed he was "pacing" Paez's vehicle, the video does not reflect any discernible effort to do so, nor does it depict any unsafe or unusual driving. To the contrary, the footage shows Paez maintaining her lane, stopping appropriately at a yellow light, proceeding safely through the intersection after the light turned green, responding immediately to the officer's emergency lights, and pulling over in a controlled and lawful manner.

## CONCLUSION

Taken together, Officer Ray's generalized testimony and the objective video evidence fail to establish the specific, articulable facts required to justify a warrantless stop under *Terry* and reaffirmed in *Ford*. The record reflects no erratic driving, no external factors, and no credible basis for the trial court's conclusion that reasonable suspicion existed. In light of this evidentiary gap—and the trial court's disregard of the video entirely—I cannot agree that the detention was constitutionally sound. I would reverse the trial court's ruling and suppress the evidence obtained as a result of the unlawful detention. As such, I respectfully dissent.

Velia J. Meza, Justice

DO NOT PUBLISH