In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00151-CR
______________________________


ANNETTE JOY BILYEU, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Criminal Court of Appeals No. 2
Dallas County, Texas
Trial Court No. MB02-14282-M


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â Police officer Jeffery Alan Rose and his partner were taking a break on the parking lot of an
Addison, Texas, convenience store around 2:00 a.m., June 20, 2002, when an unidentified man
approached them. The man reported that he saw a woman asleep at the wheel of a gold Mercedes-Benz automobile stopped at a nearby traffic lightâand the light was green. The man then noticed
the same vehicle creeping past their location at ten miles per hour in a thirty-five-mile-per-hour zone
and pointed it out. The officers followed the vehicle, noticing no traffic violations, and eventually
stopped it, identified the driver as Annette Joy Bilyeu, determined she was intoxicated,


 and arrested
her. Bilyeu appeals from her jury conviction for driving while intoxicated (DWI),


 challenging (1)
the legality of the stop and, thus, the evidence obtained from that stop, and (2) the trial court's refusal
to charge the jury regarding the legality of the search under Article 38.23 of the Texas Code of
Criminal Procedure. We affirm.
Legality of Search
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to
the trial court's determination of historical facts and review de novo any questions of law concerning
the search and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Thus, we
will review de novo the question whether Rose had reasonable suspicion to stop Bilyeu. See
Guzman v. State, 955 S.W.2d 85, 88â89 (Tex. Crim. App. 1997). In the absence of explicit findings
of fact, we view the evidence in the light most favorable to the trial court's ruling and sustain its
decision if correct under any applicable theory of law. See Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002).
Â Â Â Â Â Â Â Â Â Â Â Â To justify an investigative detention, an officer must have reasonable suspicion of possible
criminal conduct. See Terry v. Ohio, 392 U.S. 1, 21 (1968); Garza v. State, 771 S.W.2d 549, 558
(Tex. Crim. App. 1989). Courts examine the totality of the circumstances to determine whether
reasonable suspicion existed. See Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997);
State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.âFort Worth 1996, pet. ref'd). An officer must have
specific articulable facts which, taken together with rational inferences and the officer's experience
and general knowledge, reasonably indicated the detained person was preparing to engage or had
engaged in a crime. Davis, 947 S.W.2d at 242.
Â Â Â Â Â Â Â Â Â Â Â Â Bilyeu contends the information given to Rose by the unidentified citizen is on the same
footing as an anonymous tip,


 that it is insufficient to form reasonable suspicion. Bilyeu correctly
states that an anonymous tip cannot, by itself, become reliable enough to support a finding of
reasonable suspicion. Here, however, the trial court found the citizen's personally appearing before
the officers gave greater reliability to the information he provided them. 
Â Â Â Â Â Â Â Â Â Â Â Â Reasonable suspicion is dependent on both the content of the information possessed by the
officer and the degree of reliability of the information. See Davis v. State, 989 S.W.2d 859, 863
(Tex. App.âAustin 1999, pet. ref'd). While an anonymous tip or telephone call may justify the
initiation of an investigation, only rarely will a tip from an unnamed informant of undisclosed
reliability, standing alone, establish the requisite level of reasonable suspicion to justify an
investigative detention. See Florida v. J.L., 529 U.S. 266, 269 (2000). There must be some further
indicia of reliability, some additional facts from which a police officer may reasonably conclude that
the tip is reliable and a detention is justified. See id.
Â Â Â Â Â Â Â Â Â Â Â Â A. Accountability
Â Â Â Â Â Â Â Â Â Â Â Â The facts surrounding the unidentified citizen's report constitute some indicia of reliability. 
When an unnamed informant puts himself or herself in a position where he or she could easily be
accountable, the tip becomes more reliable. See Sailo, 910 S.W.2d at 188. Particularly, unsolicited
information given to police in a face-to-face manner should be given serious attention and great
weight by the officer even though the informant did not identify himself or herself. United States
v. Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir. 1978). Distinguishing the conversation in Sierra-Hernandez from an anonymous telephone call, the court pointed out that the informant confronted
the officer directly and did so while the informant was driving a car. Id. Therefore, although the
informant did not identify himself, his identity easily could have been determined from the license
plates. Id. These distinctions would have allowed the officer to further question the informant had
the officer deemed it necessary and also would have allowed officials to hold the informant
accountable for the information he provided. Id.
Â Â Â Â Â Â Â Â Â Â Â Â In Sailo, an officer stopped and eventually arrested a driver for DWI after a citizen
approached the officer with information regarding a possibly drunk driver. Sailo, 910 S.W.2d at 186. 
The citizen stated that a white Toyota pickup truck was "all over the road and had almost run into
a ditch twice." Id. When the truck approached, the officer pulled the driver over. Id. The Fort
Worth Court of Appeals concluded the face-to-face nature of the tip increased the reliability of the
information and, thus, less corroboration was necessary to justify the investigative detention. Id. at
188. The experience of the officer and his knowledge that drunk drivers frequently travel through
that area were sufficient corroboration of the highly reliable information. See id. at 189. Therefore,
the totality of the circumstances justified the investigative detention that led to the driver's arrest and
conviction. Id.
Â Â Â Â Â Â Â Â Â Â Â Â The court in State v. Fudge, 42 S.W.2d 226, 229 (Tex. App.âAustin 2001, no pet.),
considered the trial court's suppression of evidence in a DWI prosecution. In Fudge, a cab driver
approached a police officer stating that a white pickup truck was "all over the road" and that he
thought the driver was drunk. Id. at 228. The cab driver then pointed out the truck as the driver
drove it around a store parking lot. Id. The officer immediately pulled the truck over and
subsequently arrested the driver for DWI. Id. The arresting officer testified he based the stop solely
on the cab driver's tip. Id. at 229. The Austin Court of Appeals noted that the officer did not observe
any independent acts on which to base the stop. Id. at 230. The record also failed to suggest any
other facts to justify the stop. Id. at 232. Relying on Sierra-Hernandez and Sailo, the majority



concluded that the cab driver's giving unsolicited information in a face-to-face encounter made the
information alone sufficiently reliable to justify the stop. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Here, we have circumstances similar to those present in Sierra-Hernandez and Sailo. The
citizen approached the officers. He provided them with unsolicited information regarding the car
he observed four blocks away. Like the unidentified informants in Sierra-Hernandez and Sailo, the
concerned citizen here approached the officers in his vehicle, which would have allowed the officers
to identify him had they deemed it necessary. The citizen's providing this information directly to the
officers, in person, makes the information significantly more reliable than a simple anonymous
telephone call.
Â Â Â Â Â Â Â Â Â Â Â Â B. Corroboration
Â Â Â Â Â Â Â Â Â Â Â Â Further, corroboration by matters within an officer's knowledge and experience increases the
reliability of the information and, ultimately, the justification of the detention. See Sailo, 910
S.W.2d at 189. Corroboration only of details that are easily obtainable at the time the tip is made
will not furnish a basis for reasonable suspicion. J.L., 529 U.S. at 271â72; Davis, 989 S.W.2d at
864. The observations need not reveal criminal conduct; even innocent acts can give rise to
reasonable suspicion under certain circumstances. Woods v. State, 970 S.W.2d 770, 773 (Tex. Crim.
App. 1998). The officer must corroborate facts that would lead him or her to reasonably suspect that
"some activity out of the ordinary is occurring or had occurred, some suggestion to connect the
detained person with the unusual activity, and some indication that the activity is related to a crime." 
Davis, 989 S.W.2d at 863.
Â Â Â Â Â Â Â Â Â Â Â Â For instance, in Dowler v. State, 44 S.W.3d 666, 670 (Tex. App.âAustin 2001, pet. ref'd),
after officers received an anonymous call reporting a suspected drunk driver, they observed the
suspect drift within his lane of traffic, drive twenty miles per hour below the posted speed limit, and
fail to respond to the patrol car's emergency lights. Id. Such conduct, although not criminal, was
sufficient to lend reliability to the anonymous tip and to justify investigative detention of the driver
on reasonable suspicion. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Bilyeu relies on Stewart v. State, 22 S.W.3d 646, 648 (Tex. App.âAustin 2000, pet. ref'd),
to support her contention that the anonymous tip is insufficient to support reasonable suspicion. 
Since officers did not observe her commit a traffic offense, she argues, there is no meaningful
corroboration of the information provided by the citizen. She calls on this Court to treat the facts
before us in a similar manner. In Stewart, according to an anonymous caller, the driver of a green
Chevrolet Camaro apparently fell down a couple of times trying to get into his car and appeared to
be highly intoxicated. Id. The officers found the suspect's car and followed it for a short time. Id. 
During that time, it is undisputed that the officers observed no erratic driving and no traffic offense. 
That being the case, the sole basis for the vehicular stop was the anonymous tip. Id.
Â Â Â Â Â Â Â Â Â Â Â Â The case before this Court is distinguishable. Here, Rose observed Bilyeu driving a vehicle
matching the description just given by the informant. Additionally, Rose observed Bilyeu traveling
at a speed of ten miles per hour in a thirty-five-mile-per-hour zone. She continued to drive at that
speed despite the fact two police cars were following her, with no indication she noticed their
presence. Further, when Rose engaged his emergency lights, Bilyeu initially increased her speed just
before she pulled over. Also relevant to Rose's suspicion is the fact that Bilyeu was operating her
vehicle after 2:00 a.m. in Addison, an area well-known for its restaurants and bars, according to
Rose's testimony. Even though Bilyeu may not have committed a traffic violation, her unusually low
speed and her initial lack of reaction to the police, coupled with the circumstances and in light of
Rose's experience, provide adequate corroboration of the information provided by the unidentified 
citizen. Such facts clearly were of such a nature as to indicate that Bilyeu was involved in "some
activity out of the ordinary."
Â Â Â Â Â Â Â Â Â Â Â Â Bilyeu, apparently dismissing the citizen's report, also argues that observing someone driving
well below the posted speed limit is insufficient to justify Rose's stop. She cites Viveros v. State, 828
S.W.2d 2, 4 (Tex. Crim. App. 1992), and Richardson v. State, 39 S.W.3d 634, 639 (Tex.
App.âAmarillo 2000, no pet.), which conclude the traffic stops involved were unjustified since the
respective officers had no facts other than observation of slow driving to lead to reasonable
suspicion. In Viveros, when the appellant reduced his speed to match the speed of the officers' patrol
car, the officers were not justified in stopping him because his actions were insufficient to create a
reasonable belief that such actions were related to a crime. Viveros, 828 S.W.2d at 4. Likewise, in
Richardson, Department of Public Safety troopers stopped the appellant after they observed the
appellant driving forty-five miles per hour in a sixty-five-mile-per-hour speed zone. Richardson,
39 S.W.3d at 639. The cocaine discovered in the subsequent consensual search should have been
excluded since the troopers did not have reasonable suspicion to justify initially stopping Richardson. 
Id. Here, in contrast to the situations in Viveros and Richardson, Rose relied on his observation of
Bilyeu's driving and on the report of her being asleep at the wheel at a green light. In Viveros and
Richardson, there was no information provided to officers that would have prompted investigation
of those matters.
Â Â Â Â Â Â Â Â Â Â Â Â We hold that Rose, in light of the circumstances, confirmed sufficient facts which enabled
him to reasonably conclude the information given to him was reliable, and a temporary detention
was, therefore, justified. The evidence of Bilyeu's intoxication, obtained after the detention of the
vehicle, was admissible. Accordingly, the trial court did not err in overruling Bilyeu's motion to
suppress.
Â Â Â Â Â Â Â Â Â Â Â Â Even if the stop was not supportable on the basis of a reasonable suspicion of a violation of
law, the officers had sufficient information to validate the stop on the basis of the community
caretaking function. As part of an officer's community caretaking function, he or she may stop to
help someone that "a reasonable person, given the totality of the circumstances, would believe is in
need of help." Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). An officer is not
entitled to invoke the community caretaking function if he or she is primarily motivated by a
different purpose, such as law enforcement. Id. at 277. Here, the record reflects that Rose was
concerned Bilyeu may have been injured, tired, or intoxicated. The trial court, as the exclusive judge
of credibility and the fact-finder, could have concluded Rose was primarily motivated by community
caretaking concerns. See id. Once that is determined, we examine whether Rose's belief that Bilyeu
needed help is reasonable by looking at the following four factors:
(1) the nature and level of the distress exhibited by the individual; (2) the location of
the individual; (3) whether or not the individual was alone and/or had access to
assistance other than that offered by the officer; and (4) to what extent the individual,
if not assisted, presented a danger to himself or others.

Id. After being told she had been asleep behind the wheel, stopped at a green light, and then seeing
her driving for a time at ten miles per hour, fifteen less than the posted limit, apparently unaware of
the officers following her until they activated the lights on the patrol car, officers were justified in
believing there was a significant level of distress exhibited by Bilyeu. She was alone at 2:00 a.m.,
showing unusual behavior, and therefore might very well have been a danger to herself or others. 
There was ample evidence to support the stop on the basis of the community caretaking function,
and the trial court in its role as fact-finder so found. 
Â Â Â Â Â Â Â Â Â Â Â Â We overrule Bilyeu's first point of error.
Jury Instruction
Â Â Â Â Â Â Â Â Â Â Â Â In her second point of error, Bilyeu complains the trial court committed harmful error when
it refused to instruct the jury regarding the legality of the search under Article 38.23. See Tex. Code
Crim Proc. Ann. art 38.23 (Vernon Supp. 2004). We disagree. Bilyeu was entitled to an
instruction under Article 38.23 only if the evidence raised a factual issue regarding the legality of
the detention. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996). Here, Bilyeu does not
dispute any of the testimony as set out in the State's case. See Hamilton v. State, 831 S.W.2d 326,
331 (Tex. Crim. App. 1992). Rather, she argues that those facts cannot justify the officer's stopping
her. Her arguments give rise to questions of law, not of fact, and, therefore, the trial court was not
required to instruct the jury under Article 38.23. We overrule Bilyeu's second, and remaining, point
of error.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 29, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â April 29, 2004

Publish



pagination:widow-orphan;tab-stops:center 3.25in'>
Â 

Â 

   On Appeal from the County
Court at Law #1

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Gregg County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 2010-0592

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  City
of Kilgore Police Officer Joseph Harrison saw a vehicle driven by Christopher
Charles Meadows turn off of Stone Road and use a roadway that the officer
believed was a private driveway (the Roadway) to reach Utzman
Street. Â Believing that Meadows failed to
stop in the Roadway and thus committed a traffic violation, Harrison turned on
his overhead flashing lights to initiate a traffic stop.Â  Despite the flashing lights behind him,
Meadows failed to stop, but continued to drive until he reached his nearby
home. Â After seeing signs that Harrison
believed indicated that Meadows was intoxicated, Harrison placed Meadows under
arrest.Â  Meadows refused to submit to a
breath test, so Harrison obtained a search warrant for a sample of MeadowsÂ
blood to be used in testing for alcohol levels. Â Because the hospital in Kilgore was
unavailable to him, Harrison transported Meadows to a hospital in nearby
Longview (also in Gregg County) where MeadowsÂ blood was drawn. Â Tests on that blood revealed a blood-alcohol
level consistent with intoxication, and he was charged by information with a
second offense driving while intoxicated (DWI) and with fleeing from a police
officer.Â  After the trial court denied
his motion to suppress the evidence gained from the stop and search, Meadows
pled guilty to both charges.

Â Â Â Â Â Â Â Â Â Â Â  Meadows
appeals from his conviction for fleeing, arguing that the trial court erred by
failing to grant his motion to suppress because: Â (1) the officer lacked reasonable suspicion to
stop him, as the Roadway was a public road; (2) the officer lacked reasonable
suspicion to stop him, as Meadows could have stopped in the Roadway; and (3)
the blood draw, being a search, exceeded the officerÂs geographic jurisdiction.


Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court because: Â (1) the officer had reasonable suspicion to
believe the Roadway was a parking lot, driveway, or private road; (2) the
officer had reasonable suspicion to believe that Meadows failed to stop while
traversing the Roadway; and (3) a city police officer of a home-rule city may
execute a valid search warrant anywhere within the county where he is an
officer. 

Background Facts

Â Â Â Â Â Â Â Â Â Â Â  In
the early morning hours of February 7, 2010, Kilgore Police Officer Joseph
Harrison observed two vehicles parked in a church parking lot; although the
circumstances seemed somewhat suspicious to him, he did not stop to make
inquiry of the drivers because the church was just outside the city limits of
Kilgore.Â  He then saw the two vehicles
leave the parking lot and he followed them.Â 
Harrison lost contact with one of the vehicles, but continued to follow
the remaining vehicle, a truck driven by Meadows.Â  

Â Â Â Â Â Â Â Â Â Â Â  As
Harrison followed MeadowsÂ truck, he saw it turn off Stone Road onto the
Roadway, (which Harrison believed to be a private drive).Â  The Roadway ran between Stone Road and Utzman Street, and it provided access to a car wash and a
bankÂs automatic teller machine (ATM).Â 
As Harrison continued on Stone Road, he briefly lost sight of MeadowsÂ
truck, but after reasoning that no one would likely wash a car at 1:00 a.m.,
Harrison turned around and followed Meadows down the ÂdrivewayÂ (the
Roadway).Â  Upon catching up to MeadowsÂ
truck, the officer illuminated his overhead lights and tried to stop Meadows
for violating Section 545.423 of the Texas Transportation Code, which prohibits
drivers from driving through a private driveway, parking lot, or business or
residential entrance without stopping the vehicle.Â  Tex.
Transp. Code Ann. Â§ 525.423 (West 2011).Â 
Meadows ignored the lights on the police car and failed to stop,
continuing to drive until he reached his home, about 0.4 miles away.Â  Harrison arrested Meadows for fleeing a
police officer.Â  During this arrest,
although Harrison observed signs of possible intoxication (slurred speech,
alcohol on breath, red/glassy eyes, unsteady on his feet), he did not conduct
field-sobriety tests at that time; instead, he took Meadows to the Kilgore
Police Department station.Â  After Meadows
refused to perform field-sobriety tests or provide a breath specimen, Harrison
obtained a search warrant for a blood specimen.Â 
Harrison transported Meadows from the police station to Good Shepherd
Medical Center in Longview, Texas, to obtain a blood sample (the test results
of which showed elevated blood-alcohol levels).Â 


Â Â Â Â Â Â Â Â Â Â Â  Meadows
was charged by information with DWI, second offense, and fleeing from a police
officer.Â  Meadows moved to suppress the
evidence gained from the stop and search on the grounds that the traffic stop
detention and blood draw were both unlawful. Â After the trial court refused to grant the
suppression motion, Meadows pled guilty to both charges.Â  On the DWI charge, Meadows was sentenced to
one yearÂs confinement, but was granted community supervision for a period of
two years and was ordered to pay court costs.Â 
As conditions of his community supervision, he was ordered to pay an
$850.00 fine and serve one seventy-two-hour period in jail.Â  On the fleeing charge, he was assessed a
$350.00 fine and one yearÂs confinement, these being likewise subject to
community supervision for a period of one year. 

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We
review a trial courtÂs decision on a motion to suppress evidence by applying a
bifurcated standard of review. Â Graves v. State, 307 S.W.3d 483, 489
(Tex. App.ÂTexarkana 2010, pet. refÂd); Rogers v. State, 291 S.W.3d 148, 151
(Tex. App.ÂTexarkana 2009, pet. refÂd). While we
defer to the trial court on its determination of historical facts and
credibility, we review its application of the law and determination on
questions not turning on credibility de novo. Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997); Villarreal v. State,
935 S.W.2d 134, 138 n.5 (Tex. Crim. App. 1996); Graves, 307 S.W.3d at 489. Â We
also afford deference to a trial courtÂs Âapplication of law to fact
questions,Â also known as Âmixed questions of law and fact,Â if the resolution
of those questions turns on an evaluation of credibility and demeanor. Â Guzman,
955 S.W.2d at 89.Â  In other words, we
give almost total deference to the trial court in determining what the actual
facts are, and then we review de novo whether those facts are sufficient to
give rise to reasonable suspicion. Â Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001) (determinations of reasonable suspicion and probable
cause should be reviewed de novo on appeal) (citing Ornelas v. United States, 517 U.S. 690 (1996)).

Â Â Â Â Â Â Â Â Â Â Â  Since
all the evidence is viewed in the light most favorable to the trial courtÂs
ruling, we are obligated to uphold the denial of MeadowsÂ motion to suppress if
it was supported by the record and was correct under any theory of law
applicable to the case. Â Carmouche, 10
S.W.3d at 327Â28; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

Â Â Â Â Â Â Â Â Â Â Â  The Officer Had Reasonable
Suspicion to Believe the Roadway Was a Private Drive

Â Â Â Â Â Â Â Â Â Â Â  Officer
Harrison stopped Meadows for driving through a private driveway without
stopping.Â  As part of his first point of
error, Meadows argues that the trial court erred in denying his motion to
suppress, because the Roadway in question was actually a part of Utzman Street, a public road, and therefore the officer
pulled him over for an act that did not constitute a traffic offense.Â  Meadows argues that because his actions did
not amount to a traffic offense, the officer lacked reasonable suspicion to
stop him.Â  

Â Â Â Â Â Â Â Â Â Â Â  A
law enforcement officer may lawfully stop and detain a person for a traffic
violation committed in the presence of the officer. Â Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Zervos v. State, 15 S.W.3d 146, 151 (Tex. App.ÂTexarkana 2000, pet. refÂd). Â ÂA routine
traffic stop resembles an investigative detention.Â Â State v.
Cardenas, 36 S.W.3d 243, 246 (Tex. App.ÂHouston [1st Dist.] 2001, pet. refÂd).Â  The United
States Supreme Court in Terry v. Ohio
established the test for investigative detentions. Â Terry
established a two-pronged test for investigative detentions. Â Terry v.
Ohio, 392 U.S. 1, 19Â20 (1968). Â To
determine the reasonableness of an investigative detention, the court must
inquire: Â Â(1) whether the officerÂs
action was justified at its inception; and, (2) whether it was reasonably
related in scope to the circumstances which justified the interference in the
first place.Â Â Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry, 392 U.S. at 19Â20.

Â Â Â Â Â Â Â Â Â Â Â  Meadows
challenges the first prong of the test.Â 
ÂUnder the first prong, Âthe police officer must be able to point to
specific and articulable facts which, taken together
with rational inferences from those facts, reasonably warrant that intrusion.ÂÂ
Â Id.
(quoting Terry, 392 U.S. at 21). Â These facts must be more than a mere hunch or
suspicion. Â Id. at 244. Â Whether the
officerÂs suspicion was reasonable is evaluated based on Âan objective standard
that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.Â Â Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Â The specific, articulable
facts, along with rational inferences from those facts, must allow the officer
to reasonably conclude the person detained actually is, has been, or soon will
be engaged in criminal activity. Â United States v. Sokolow,
490 U.S. 1, 10 (1989).

Â Â Â Â Â Â Â Â Â Â Â  In
a motion to suppress setting, the propriety of an arrest or detention need not
be proven beyond a reasonable doubt.Â  See Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001); Lalande v. State, 676 S.W.2d 115, 117Â18, 117
n.4 (Tex. Crim. App. 1984).Â  In the
recent case of York v. State, the
Texas Court of Criminal Appeals held that the StateÂs standard of proof is Âthe
one that applies to most constitutional suppression issues: preponderance of
the evidence.Â[1] 342
S.W.3d 528, 543 (Tex. Crim. App. 2011) (citations and footnotes omitted).Â  The court, however, cautioned that appellate
courts should not defer to a police officerÂs legal conclusions. Garcia, 43 S.W.3d at 531. Â Since Garcia,
several Texas courts of appeals have noted an officerÂs incorrect understanding
of the law does not give rise to a reasonable suspicion.Â  Fowler
v. State, 266 S.W.3d 498 (Tex. App.ÂFort Worth 2008, pet. refÂd); Goudeau v. State,
209 S.W.3d 713, 716 (Tex. App.ÂHouston [14th Dist.] 2006, no pet.); see United States v. Miller, 146 F.3d
274, 279 (5th Cir. 1998). Â The Third
Circuit has explained this distinction succinctly as follows:

[M]istakes of fact are rarely fatal to an officerÂs
reasonable, articulable belief that an individual was
violating a traffic ordinance at the time of a stop, many of our sister
circuits have held that mistakes of lawÂeven reasonable onesÂcan render a
traffic stop ÂunreasonableÂ under the Fourth Amendment.

Â 

United States v. DelfinÂColina,
464 F.3d 392, 398 (3d Cir. 2006).Â  We
believe the Third CircuitÂs holding explains the distinction made by the Texas
Court of Criminal Appeals in Garcia. Â See Madden v. State, 242 S.W.3d 504, 508 n.7
(Tex. Crim. App. 2007) (noting factual issue was not whether defendant was
actually speeding, but whether officer had reasonable belief defendant was
speeding). 

Â Â Â Â Â Â Â Â Â Â Â  The
charge lodged against Meadows was not the violation of the Texas Transportation
Code in crossing over a private driveway (in common vernacular, Âcorner
cuttingÂ), but fleeing from a police officer and DWI.Â  Therefore, the question here is not whether
Meadows actually violated the traffic law but, rather, the objective
reasonableness of the officerÂs suspicion that Meadows had violated it.Â  See
id. (noting factual issue not whether
defendant was actually speeding, but whether officer had reasonable belief
defendant was speeding). Â Specifically,
based on the facts presented, does a correct interpretation of the law allow a
police officer to reasonably suspect that the Roadway was a private drive,
parking lot, or other private road? 

Â Â Â Â Â Â Â Â Â Â Â  Here,
there is evidence that the Roadway was a public road.[2]Â  Maps from internet sites Google and Planetware label the Roadway as ÂUtzman
Street.ÂÂ  There are several traffic
control signs on the Roadway, including Âno left turn,Â Âone way,Â and Âno
right turn.ÂÂ  Officer Harrison admitted
that the signs appear to be Âpublic Â an actual official traffic-control sign,Â
rather than signs that a private entity would erect.Â  At the time of the stop, Harrison was unaware
that the Roadway had traffic signs on it.Â 


Â Â Â Â Â Â Â Â Â Â Â  There
is also evidence that the Roadway was a private road.Â  Harrison testified that the Roadway was Ânot
on our maps that we use in the police department as a street. Â ItÂs just a driveway.ÂÂ  However, nothing in the record indicates that
Harrison had memorized or consulted these police maps prior to the stop.[3]Â  Harrison had personal experience with the
Roadway in dispute because he had Âused that ATM before.Â[4]Â  

Â Â Â Â Â Â Â Â Â Â Â  Obviously,
reasonable minds could differ as to whether the Roadway was actually a public
roadway or a private one. Â Considering
the officerÂs prior experience in using the Roadway and the conflicting
evidence which supports both the view that it was public and that it was
private, we find that Harrison had reasonable suspicion to believe that the
Roadway was a private drive. Therefore, we overrule this portion of MeadowsÂ
first point of error. 

Â Â Â Â Â Â Â Â Â Â Â  The Officer Had Reasonable
Suspicion to Believe that Meadows Failed to Stop While Traversing the Roadway

Â 

Â Â Â Â Â Â Â Â Â Â Â  As
a part of his first point of error, Meadows contends that the trial court erred
by denying his motion to suppress because the officer lacked reasonable
suspicion that Meadows failed to stop while traversing the Roadway.Â  Applying the standards discussed above (and
assuming there was sufficient evidence for the officer to reasonably believe
the Roadway to be a private drive), the issue is whether the facts presented in
the record are sufficient to establish reasonable suspicion that Meadows failed
to stop. Â See Garcia, 43 S.W.3d at 531.Â 


Â Â Â Â Â Â Â Â Â Â Â  When
Meadows turned from Stone Road onto the Roadway, Harrison turned off his video
camera and continued along Stone Road for a moment before making a U-turn and
turning down the Roadway to follow Meadows.Â 
He saw that Meadows Âhad made it all the way to Utzman
Road,Â so Harrison Âgot on it,Â[5] and
once again got behind Meadows and activated his overhead lights and video
camera.Â  Harrison testified that the lights
and camera were turned back on at the point Meadows was turning from Utzman Street onto Parkview.Â  He testified that he only lost sight of
Meadows for Âprobably five or ten seconds,Â but he admitted that it would not
surprise him to find out that his video camera had remained turned off for
almost a full minute.Â  He did not believe
that Meadows Âhad stopped and then started going again,Â so he attempted to
pull him over for driving through private property.Â  

Â Â Â Â Â Â Â Â Â Â Â  Here,
even though the video camera was turned off for almost a minute, there is
evidence that Harrison lost visual contact with Meadows for only a few seconds
and that by the time Harrison caught up to Meadows, he had left the Roadway,
entered Utzman Street, and was turning onto
Parkview.Â  We find that it is reasonable
under these circumstances for an officer to suspect that Meadows lacked an
adequate amount of time to stop his truck and then start moving again.
Accordingly, we overrule this point of error. 

Â Â Â Â Â Â Â Â Â Â Â  A City Police Officer
May Execute a Valid Search Warrant Anywhere in the County

Â Â Â Â Â Â Â Â Â Â Â  In
his second point of error, Meadows contends that denying his motion to suppress
was error because Harrison lacked the authority to execute the search warrant
outside the City of Kilgore.Â  

Â Â Â Â Â Â Â Â Â Â Â  Harrison
obtained a search warrant from a Kilgore city judge for a sample of MeadowsÂ
blood.Â  Because the Kilgore hospital was
closed, Harrison transported Meadows outside the City of Kilgore to Good
Shepherd Medical Center in Longview, where MeadowsÂ blood sample was taken.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
search warrant directs Âany Sheriff or any Peace Officer of Gregg County,
Texas, or any Peace Officer of the State of Texas,Â to seize Meadows and carry
him to a Âphysician, registered nurse, or medical laboratory technician skilled
in the taking of HUMAN BLOOD . . . and the said physician, registered nurse, or
laboratory technician shall takeÂ samples of MeadowsÂ blood.Â  There is no dispute that the search warrant
itself is valid county-wide, that Harrison is a peace officer of Gregg County,
that both Kilgore and Longview are municipalities within Gregg County, or that
the sample was taken in a proper manner.Â 


Â Â Â Â Â Â Â Â Â Â Â  MeadowsÂ
sole argument rests upon the fact that the Texas Local Government Code
specifically grants general-law municipal police departments countywide
jurisdiction, but does not similarly grant this same authority to home-rule
municipalities, such as Kilgore.[6]
Thus, Meadows maintains, police departments of home-rule municipalities have
only city-wide jurisdiction to execute search warrants. Â 

Â Â Â Â Â Â Â Â Â Â Â  Section
341.001 of the Texas Local Government Code, applying to Type A municipalities,
states:

Â Â Â Â Â Â Â Â Â Â Â  (e)Â Â Â Â Â Â Â  A
police officer has:

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â  the
powers, right, duties, and jurisdiction granted to or imposed on a peace
officer by the Code of Criminal Procedure; and

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  (2)Â Â Â Â Â Â Â  other powers and duties prescribed by
the governing body.

Â Â Â Â Â Â Â Â Â Â Â  (f)Â Â Â Â Â Â Â  A
police officer may serve in each county in which the municipality is located
all process issued by a municipal court.

Â 

Tex. Loc. GovÂt Code Ann. Â§ 341.001 (West 2005).Â  This blanket grant of statutory authority
given to police officers in Type A municipalities contrasts with Section
341.003 of the Local Government Code, entitled ÂPolice Force of a HomeÂRule
Municipality,Â which says only that Â[a] home-rule municipality may provide for
a police department.Â Â Tex. Loc. GovÂt Code
Ann. Â§Â 341.003 (West 2005). 

Â Â Â Â Â Â Â Â Â Â Â  If
a police officerÂs geographic jurisdiction is not found in some statute, it is
controlled by the common law. Â State v. Kurtz, 111 S.W.3d 315 (Tex.
App.ÂDallas 2003), affÂd,
152 S.W.3d 72 (Tex. Crim. App. 2004) (traffic stop improper because offense
occurred outside city limits); see Angel v. State, 740 S.W.2d 727, 732Â33
(Tex. Crim. App. 1987) (relying on former revised civil statutes Articles 998
and 999, held that officerÂs jurisdiction is county-wide, but case was later
superseded by statute, and it continues to be cited today for holding that
jurisdiction is determined by common law if it is not found in statute).Â  At common law, a police officerÂs
jurisdiction was confined to the limits of his city. Â See
Landrum v. State, 751 S.W.2d 530, 531 (Tex. App.ÂDallas 1988), pet. refÂd,
795 S.W.2d 205 (Tex. Crim. App. 1990) (per curiam). Â Thus, unless there exists some statutory
authority for extension of that jurisdiction, the city officerÂs jurisdiction
was limited to the cityÂs geographical limits. Â See
Angel, 740 S.W.2d at 732.Â  However,
we find the Kurtz line of cases to be
distinguishable from the present case because the investigative stop in Kurtz was a detention, falling under the
powers of arrest, rather than a search, such as we have here.

Â Â Â Â Â Â Â Â Â Â Â  Our
sister court in Fort Worth directly addressed this issue in $27,877.00
Current Money of United States v. State, and determined that Âa home-rule
municipal police forceÂs jurisdiction for the execution of a valid search
warrant is at least as broad as that of a general-law municipality, that is, at
least countywide.Â Â 331 S.W.3d 110, 117
(Tex. App.ÂFort Worth 2010, pet. denied) (citing Brother v. State, 85 S.W.3d 377, 385 (Tex. App.ÂÂFort Worth 2000),
affÂd, 166
S.W.3d 255 (Tex. Crim. App. 2005) (holding jurisdiction of a Type A
municipality police officer is Âat least county-wideÂ); see also Proctor v. Andrews, 972 S.W.2d 729, 733 (Tex. 1998) (Â[A]
home rule city . . . has all the powers of the state not inconsistent with the
Constitution, the general laws, or the cityÂs charter . . . .Â).Â  The Fort Worth court reasoned: 

Home-rule
municipalities are different from general-law municipalities because a Âhome
rule city derives its power not from the Legislature but from Article XI,
Section 5, of the Texas Constitution.Â Â Lower Colo. River Auth. v. City of San
Marcos, 523 S.W.2d 641, 643 (Tex. 1975); see also Tex. Const. art.
XI, Â§ 5. Â They possess Âthe full power of
self government and look to the Legislature not for grants of power, but only
for limitations on their power.Â Â Dallas Merchs.Â
& ConcessionaireÂs AssÂn v. City of Dallas,
852 S.W.2d 489, 490Â91 (Tex. 1993). Â A
home-rule municipalityÂs powers may therefore be limited by statute, but only
when the legislatureÂs intention to do so appears Âwith unmistakable clarity.Â Â Proctor
v. Andrews, 972 S.W.2d 729, 733 (Tex. 1998).

Â 

The
reason that section 341.003 does not grant home-rule police countywide
jurisdiction is because home-rule municipalities do not receive their grants of
power from the legislature. Â See Lower Colo. River Auth., 523 S.W.2d at
643. General-law municipalities, on the other hand, do. Â See Tex.
DepÂt of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 645 (Tex. 2004)
(ÂGeneral-law municipalities . . . are political subdivisions created by the
State and, as such, possess those powers and privileges that the State
expressly confers upon them.Â). Â We do
not see in local government code sections 341.001 or 341.003, or in any other
statute, any clear intent by the legislature to restrict a home-rule
municipality police force to a jurisdiction any less than that of a general-law
municipality.

Â 

$27,877.00 Current Money of United States,
331 S.W.3d at 115Â16.

Â Â Â Â Â Â Â Â Â Â Â  It
is the duty of every peace officer, when a search warrant is duly delivered to
him, to Âexecute it without delay.Â Â Tex. Code Crim. Proc. Ann. art. 18.06 (West
2005).Â  A search warrant is sufficient if
it Âcommand[s] any peace officer of the proper county to search forthwith the
person, place, or thing named.Â Â Tex. Code Crim. Proc. Ann. art. 18.04
(West 2005). Â The search warrant in this
case authorized Âthe Sheriff or any Peace Officer of Gregg County, Texas or any
Peace Officer of the State of TexasÂ to conduct the search described within it.
Â City police officers are Âpeace
officersÂ as defined by Article 2.12(3) of the Texas Code of Criminal
Procedure. Â Tex. Code Crim. Proc. Ann. art. 2.12(3) (West 2010). Â The Texas Penal Code does not define the
phrase Âof the countyÂ or Âof the State of Texas,Â but since a warrant must
command a peace officer Âof the proper county,Â we take ÂPeace Officer of Gregg
CountyÂ to mean a peace officer with jurisdiction throughout Gregg County. Â See $27,877.00 Current Money of United States,
331 S.W.3d at 117.Â  

Â Â Â Â Â Â Â Â Â Â Â  We
agree with the well-reasoned opinion in $27,877.00 Current Money of United States,
and hold that a home-rule municipal police forceÂs jurisdiction for the
execution of a valid search warrant is at least countywide.Â  Because the search warrant in this case was
issued in Kilgore, in Gregg County, by a magistrate with jurisdiction in Gregg
County, to a Kilgore police officer with jurisdiction in Gregg County, we hold
that Officer Harrison acted within his duty and jurisdiction to accept the
search warrant and execute it.Â 
Accordingly, we overrule this point of error.

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment.Â  

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  October 19, 2011

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  November 15, 2011

Â 

PublishÂ Â Â Â Â Â Â Â Â Â Â  

Â 











[1]In York, the
court noted that Â[i]n at least one instance--the
voluntariness of consent--the burden of proof is Âclear and convincing
evidence.ÂÂ Â 342 S.W.3d at 543 n.85
(citations omitted). 

Â 





[2]Formal
dedication of a roadway is only one means by which a roadway can become a
public thoroughfare.Â  There are other
ways, including prescriptive easement, Allen
v. Keeling, 613 S.W.2d 253, 254 (Tex. 1981), and implied dedication, Lindner v. Hill, 691 S.W.2d 590, 592
(Tex. 1985).

Â 





[3]There
is no sign on the Roadway labeling the known public streets at either end of
the Roadway, and no ÂstopÂ or ÂyieldÂ signs at either end of the Roadway.Â  The surface of the Roadway is the same type
and pattern as that of the bankÂs parking lot.Â 
However, there is no evidence in the record that Harrison was aware of,
or that he considered, such evidence at the time of the stop. 

Â 





[4]We
note that Harrison testified that the presence of the ATM on the Roadway Âdid
not enter [his] mind untilÂ it was brought up at MeadowsÂ license revocation
hearing.Â  However, Harrison was not
testifying regarding the public or private nature of the Roadway, but rather,
the initial reason he believed Meadows had turned onto the Roadway in the first
placeÂÂI figured he was going to wash his car.ÂÂ 






[5]We
presume Âgot on itÂ to mean that Harrison sped up quickly, that is, he Âgunned
it,Â Âfloored it,Â or Âput the pedal to the metal.ÂÂ  





[6]According to the City of KilgoreÂs website, http://cityofkilgore.com/government,
Kilgore is a home-rule municipality, and on our own initiative, we take
judicial notice of that fact. Â See Tex.
R. Evid. 201(b)(2), (c), (d), (f) (at any
stage of proceeding, court in its discretion and on its own motion can take
judicial notice of facts capable of accurate and ready determination by resort
to sources whose accuracy cannot reasonably be questioned); see also Watkins v. State, 245
S.W.3d 444, 455 (Tex. Crim. App. 2008).

Â